















JPP    10/30/01    10:09

3:01-CV-01973   ACOSTA V. CITY OF SAN DIEGO

*1*

*CMP.*

1   MEIR J. WESTREICH
    Attorney at Law
2   221 East Walnut, Suite 200
    Pasadena, California 91101
3   626-440-9906

4

5   Attorney for Plaintiff

6

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10                                    '01 CV 1973 L(JAH)

11  ELIZABETH M. ACOSTA,              ) Case No.
                                      )
12                     Plaintiff,     ) COMPLAINT FOR DAMAGES AND
                                      ) FOR INJUNCTIVE RELIEF
13                                    )
    vs.                               ) [42 U.S.C. sec.1983 &
14                                    )  Pendent State Claims]
    CITY OF SAN DIEGO, a municipal    )
15     corporation; GARY HILL, JOSEPH )
       KROUSS, ERIC STAFFORD, RAPHAEL )
16     CIMARRUSTI & DOES I-V, in their)
       official & individual capacities; ) JURY DEMANDED
17     QUALCOMM STADIUM, an independent )
       municipal agency; VOLUME SERVICES )
18     OF AMERICA dba MURPHY'S CLUB;  )
       MURPHY'S CLUB; HENRY FONTENETTE, )
19     MICHAEL OLIVER & DOES VI-X, in )
       their representative & individual )
20     capacities; ELITE SHOW SERVICES, )
       Inc.; DONALD WILLIAMS, VLADIMIR )
21     ATABEKIAN & DOES XI-XV, in their )
       representative & individual     )
22     capacities; SAN DIEGO CHARGERS, )
       INC.; DOES XVI-XX,              )
23                                     )
                       Defendants.    )
24  _____ )

25       1.   This is an action at law and in equity to redress the

26  deprivation by Defendants of Plaintiff's rights, privileges and

27  immunities, secured by the First, Fourth and Fourteenth Amendments

28  to the Constitution of the United States, said deprivation of

                              1

1 | Plaintiff's rights by Defendants being at all times under the color
2 | of state law, in derogation of Plaintiff's rights secured by
3 | 42 U.S.C. sec.1983.

**COMMON ALLEGATIONS AS TO ALL DEFENDANTS AND
ALL FEDERAL AND PENDENT STATE CLAIMS**

2.   The jurisdiction of this Court is invoked under 28 U.S.C. sec.1343, this being an action authorized by law to redress the deprivation under color of state law, statute, ordinance, regulation, custom and usage of a right, privilege or immunity secured to Plaintiff by the First, Fourth and Fourteenth Amendments to the Constitution of the United States, as secured by 42 U.S.C. sec.1983.

3.   Plaintiff is Elizabeth M. Acosta.

4.   At all times pertinent to this Complaint: Defendant CITY OF SAN DIEGO ["City"] is a municipal corporation and a unit of local government duly formed and authorized under the laws of the State of California.   As part of its governing function, and pursuant to enabling provisions under the California Government Code, the City provides and administers the SAN DIEGO POLICE DEPARTMENT ["SDPD"], and in accordance therewith employs persons responsible for law enforcement and the investigation and prosecution of public offenses; owns and administers Defendant Qualcomm Stadium, an independent municipal agency; contracts with Defendant Volume Services of America, Inc. d.b.a. Murphy's Club and Murphy's Club to provide a restaurant-bar within Qualcomm Stadium; and contracts with Defendant Elite Security Agency, Inc. to provide security services during stadium events, including football games.

5.   At all times pertinent to this Complaint: Defendant

2

1  QUALCOMM STADIUM ["Qualcomm"] is an independent municipal agency of

2  Defendant City of San Diego, operating under the laws of the State

3  of California and the laws and administration of Defendant City of

4  San Diego, which rents its stadium facilities to Defendant San

5  Diego Chargers, to play professional football competition under the

6  National Football League; rents its service facilities to

7  Defendants Volume Services of America d.b.a. Murphy's Club, and

8  Murphy's Club, a restaurant-bar; employs Defendant Elite Security

9  Agency, Inc. for security during football and other stadium events;

10 and employs San Diego Police Officers for additional security

11 during football and other stadium events.

12      6.   At all times pertinent to this Complaint: Defendant SAN

13 DIEGO CHARGERS, INC. ["Chargers"] is a California Corporation which

14 operates a professional football team in the National Football

15 League, playing its home games in Defendant Qualcomm Stadium in the

16 County of San Diego; employs Defendant Elite Security Agency, Inc.

17 for security during football games; and employs individual San

18 Diego Police Officers for additional security and law enforcement

19 during football games.

20      7.   At all times pertinent to this Complaint: Defendant VOLUME

21 SERVICES OF AMERICA, INC. d.b.a. MURPHY'S CLUB ["Murphy's Club"]

22 is a foreign corporation doing business in the State of California,

23 County of San Diego, under the d.b.a. MURPHY'S CLUB, providing a

24 restaurant-bar within Defendant Qualcomm Stadium, serving as a

25 sports bar during stadium events, including professional football

26 games of Defendant San Diego Chargers; employs Defendant Elite

27 Security Agency, Inc. to provide security services while in

28 operation during stadium events; and employs individuals to provide

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF

1  internal security and to control patrons within the bar.  Defendant
2  MURPHY'S CLUB is the entity under which Defendant VOLUME SERVICES
3  OF AMERICA, INC. operates in Defendant Qualcomm Stadium.

4      8.  At all times pertinent to this Complaint: Defendant ELITE
5  SHOW SERVICES, INC. ["Elite Security"] is a California Corporation
6  which provides security on a contract basis in the County of San
7  Diego; in accordance therewith provides security for Defendants
8  Qualcomm Stadium, San Diego Chargers, Inc. and Volume Services of
9  America, Inc. d.b.a. Murphy's Club during stadium events, including
10 Charger football games; and employs individual persons as security
11 guards.

12     9.  At all times pertinent to this Complaint: Defendants
13 Officers GARY HILL, JOSEPH KROUSS, ERIC STAFFORD, RAPHAEL
14 CIMARRUSTIE, and DOES I-V were and are duly appointed as sworn
15 peace officers of the State of California, employed by Defendant
16 City of San Diego as police officers; further, they were employed
17 to provide security and law enforcement at Defendants Qualcomm
18 Stadium during a football game stadium event; and they reside in
19 the County of San Diego.  All of these individual defendants are
20 sued in their individual and official capacities, and are
21 hereinafter collectively referenced as the "individual SDPD
22 Defendants".  Defendant City of San Diego and the individual SDPD
23 Defendants are collectively referred to as the "City Defendants."

24     10.  At all times pertinent to this Complaint: Defendants
25 HENRY FONTENETTE, MICHAEL OLIVER and DOES VI-X were and are
26 employed as unlicensed private security ["bouncers"] by Defendant
27 Volume Services of America, Inc. d.b.a. Murphy's Club and by
28 Murphy's Club; and they reside in the County of San Diego.  All of

1 these individual defendants are sued in their individual and
2 representative capacities, and are hereinafter collectively
3 referenced as the "individual Murphy's Club Defendants".
4 Defendants Volume Services of America, Inc. d.b.a. Murphy's Club,
5 Murphy's Club and the individual Murphy's Club Defendants are
6 collectively referred to as the "Murphy's Club Defendants."

7     11. At all times pertinent to this Complaint: Defendants
8 DONALD WILLIAMS, VLADIMIR ATABEKIAN and DOES XI-XV were and are
9 employed as licensed private security guards by Defendant Elite
10 Security Agency, Inc.; and they reside within the County of San
11 Diego. All of these individual defendants are sued in their
12 individual and representative capacities, and are hereinafter
13 collectively referenced as the "individual Elite Security
14 Defendants". Defendants Elite Security Agency, Inc. and the
15 individual Elite Security Defendants are collectively referred to
16 as the "Elite Security Defendants."

17     12. At all times pertinent to this Complaint: Defendant DOES
18 I-V were and are other unknown individual SDPD officers involved in
19 the events herein; DOES VI-X are other unknown individual Murphy's
20 Club bouncers involved in the events herein; DOES XI-XV are other
21 unknown individual Elite Security guards involved in the events
22 herein; and DOES XVI-XX are unknown entities with a legal interest
23 in, who employed or contracted with, or held governing,
24 administrative or supervisory authority over, other entity or
25 individual defendants herein. This complaint will be amended and
26 the true names of the Doe defendants added when their true
27 identities are learned by plaintiff.

28     13. At all times pertinent to this Complaint: the individual

1   SDPD Defendants acted under color of their official capacities;
2   further, these defendants acted separately and in concert under
3   color of the statutes, ordinances, regulations, customs and usages
4   of the State of California and the City of San Diego.

5       14.  At all times pertinent to this Complaint: the individual
6   SDPD Defendants separately and in concert executed the policies and
7   customs established by directive and/or practice, by the City of
8   San Diego, or officials empowered by law to make or express policy
9   for the City of San Diego;  further, the City of San Diego and
10  those officials empowered by law to make or express policy for the
11  City of San Diego have, by words, action and/or inaction caused
12  and/or ratified the unlawful acts of the individual Defendants,
13  including but not limited to a failure to adequately train and/or
14  discipline the individual Defendants, and a failure to prevent
15  future misconduct and harm of which said policy-makers knew or
16  reasonably should have known.

17      15.  At all times pertinent to this Complaint: all of the
18  individual and private entity defendants were acting in concert
19  with the public defendants who were duly sworn peace officers in
20  the State of California, each of them appointed and employed by the
21  City of San Diego, and who at relevant times herein acted under
22  color of their official capacities under color of the statutes,
23  ordinances, regulations, customs and usages of the State of
24  California and/or the City of San Diego.

25      16.  At all times pertinent to this Complaint: all of the
26  individual and private entity defendants were acting under color of
27  law in that their authority to commit the acts of which they are
28

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF

1 | accused herein is provided under the authority and/or laws of the
2 | State of California and the City of San Diego.

3 |     17. At all times pertinent to this Complaint: each of the
4 | private and public defendants, both individuals and entities, were
5 | acting as agents, employees and/or principals of each other;
6 | further, each of the private defendants were acting as principals
7 | under which police officers were acting as their agents or in
8 | concert with them, as provided under state law; further, the
9 | private defendants were acting under the direction, advice and
10 | control of the defendant officers; and each entity defendant is
11 | liable by respondeat superior for all of the acts of each other
12 | defendant, except as limited by law for the City of San Diego in
13 | respect to the individual SDPD Defendants.

14 |     18. At all times pertinent to this Complaint: all of the
15 | individual and private entity defendants were acting under color of
16 | their  representative capacities; further, said individual and
17 | private entity defendants were at all times acting within the
18 | course and scope of their employment and agency by their respective
19 | defendant entity employers and principals, and further acting as
20 | authorized agents for their employer, principals and each other.

21 |     19. At all times pertinent to this Complaint: each of the
22 | entity defendants authorized and/or caused the individual
23 | defendants to take the actions they took in respect to plaintiff,
24 | including but not limited to a failure to adequately train and/or
25 | supervise the individual defendants.

26 |     20. At all times pertinent to this Complaint: each of the
27 | private entity defendants and those corporate and/or partnership
28 | and/or company officials and agents empowered and authorized to

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF

1  make decisions on behalf of the respective private entity
2  defendants have, by words, action and/or inaction authorized,
3  caused and/or ratified the acts of the individual private
4  defendants, including but not limited to a failure to discipline
5  them and others, nor to take any other appropriate corrective
6  action, and having knowledge of the relevant surrounding
7  circumstances.

8      21.   The individual Defendants, separately and in concert,
9  conspired to engage and engaged in the illegal conduct here
10 mentioned, or joined the conspiracy of others, to the injury of
11 Plaintiff of the rights, privileges and immunities secured to
12 Plaintiff by the First, Fourth and Fourteenth Amendments to the
13 Constitution of the United States and the laws of the United States
14 and the State of California.  One or more of said Defendants acted
15 in furtherance of said conspiracy.

16     22.   The individual Defendants, separately and in concert,
17 conspired to engage and engaged in the illegal conduct here
18 mentioned, or joined the conspiracy of others, to the injury of
19 Plaintiff of the rights, privileges and immunities secured to
20 Plaintiff by the Constitution and laws of the State of California,
21 thereby denying Plaintiff the equal protection of the laws of the
22 State of California, a right secured to Plaintiff by the Fourteenth
23 Amendment to the Constitution of the United States.  One or more of
24 said Defendants acted in furtherance of said conspiracy.

25     23.   At all times pertinent to this Complaint:   The
26 Defendants, and each of them, knew or should have known that the
27 wrongs here mentioned involving Plaintiff were about to be
28 committed; and further the Defendants had the power to prevent or

1  aid in preventing the commission of the same. Despite this, said
2  Defendants refused and/or failed to prevent or aid in the
3  preventing the commission of said wrongs, and said wrongs were in
4  fact committed, denying Plaintiff her rights secured under the
5  First, Fourth and Fourteenth Amendments to the Constitution.

6      24.  At all times pertinent to this Complaint: the Defendants
7  have conspired among one another, and with other persons not named
8  herein and whose identities are unknown at present, to commit the
9  unlawful acts described herein, and one or more acts in furtherance
10 of said conspiracy have been committed.

11     25.  Each of the Defendants participated in and/or caused the
12 unlawful conduct mentioned herein.

13     26.  Each of the Defendants herein knew or should have known
14 that the wrongs here mentioned were being or about to be committed,
15 whether by other defendants, or by public and/or police officers
16 acting as agents of or in concert with one or more of the private
17 defendants, and further had the power to prevent or aid in
18 preventing the commission of the same or the injuries and damages
19 arising therefrom.  Despite this, said Defendants deliberately
20 refused and/or failed to prevent or aid in the preventing the
21 commission of said wrongs or infliction of said damages, and said
22 wrongs were in fact committed and damages suffered, denying
23 Plaintiff her rights secured under the First, Fourth and Fourteenth
24 Amendments to the Constitution of the United States.

25     27.  By contract and state and municipal law, Defendants
26 Qualcomm Stadium and San Diego Chargers, and their contract
27 entities and individual employees, act and operate as public or
28

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF

1   quasi-public agencies with public authority and under color of law
2   of the State of California and the City of San Diego.

3       28.   Pursuant to policy of Defendants Qualcomm, Chargers and
4   Elite Security, patrons who engage in unlawful fighting or other
5   disruptive behavior within the stadium during football games, or
6   otherwise violate stadium rules, may be ejected from the stadium,
7   within the discretion of stadium officials and security.  Ejected
8   patrons are photographed and recorded, to protect against any
9   attempt to re-enter during that event.

10      29.   Pursuant to policy of Murphy's Club, patrons who engage
11  in unlawful fighting or disruptive behavior within the club, or who
12  otherwise violate club rules, may be ejected from the club, within
13  the discretion of club officials and security; and if such patrons
14  resist or are to be also ejected from the stadium, bouncers are not
15  to use physical force except in self-defense and security guards
16  from Elite Security and/or police officers are to be summoned to
17  enforce the ejection.   These bar policies, including the
18  prohibition against use of non-defensive force, are standard in the
19  bar business.

20      30.   SDPD Officers providing stadium security and law
21  enforcement are at all times acting as peace officers, with the
22  full authority as provided them by the State of California and the
23  City of San Diego.  They are empowered to eject patrons when
24  lawfully requested by officials of Qualcomm Stadium, the Charger,
25  Murphy's Club and/or Elite Security, in enforcement of State and
26  City laws governing trespass; and to make arrests as authorized by
27  the laws of the State of California and City of San Diego.

28

31. Pursuant to SDPD policy, persons arrested within Qualcomm Stadium are taken to an SDPD holding area within the stadium, wherein there is a camera system to videotape persons being brought in and being held in custody to assure a videotape record of their condition and circumstances while under restraint and arrest.

32. Pursuant to SDPD Use of Force Policy, officers are afforded discretion to utilize the carotid choke hold, by which the person is rendered unconscious by cutting off the oxygen supply to the brain via the carotid arteries; and to use a form of maximum restraint informally known as "hogtying" by which the person is handcuffed behind her back, her legs are also bound with a strap, and the legs are then strapped and tied backward to the cuffed hands. These forms of restraint can cause and have caused death, but are not treated as forms of deadly force under SDPD policy.

33. SDPD Use of Force Policy provides specific guidelines for the manner in which the carotid hold and the referenced maximum restraint is administered, some whose protocols are designed to reduce the risk of death to the person restrained.

34. SDPD Use of Force Policy also provides for a method of restraining a person, when four (4) or more officers are present and available, which involves the officers each restraining one of the person's limbs.

**FEDERAL CLAIMS AGAINST INDIVIDUAL DEFENDANTS**

35. On October 29, 2000, the Chargers played a football game, hosting the Oakland Raiders, at Qualcomm Stadium. Murphy's Club was open for business during the game, with Defendants Fontenette and Oliver on duty as bouncers; Elite Security was providing security, with Defendants Williams and Atabekian on duty; and

11

1  Defendant SDPD Officers Hill, Krouss, Stafford and Cimarrusti were

2  on duty, with Hill and Krouss assigned as a team to the parking lot

3  outside the stadium, and Stafford and Cimarrusti assigned as a team

4  within the stadium.

5      36.   Defendant Murphy's Club bouncers Fontenette and Oliver,

6  by plaintiff's estimate, were over 6' tall and over 250 lbs. each.

7      37.   Defendant Elite Security guards Williams and Atabekian,

8  by plaintiff's estimate, were of average height and weight.

9      38.   Defendant SDPD Officer Hill was 6'0" and 325 lbs. and is

10  grossly out of shape.  Defendant SDPD Officer Krouss was 6'4" and

11  300 lbs.   Defendant SDPD Officers Stafford and Cimarrusti, by

12  plaintiff's estimate, were of average height and weight.

13      39.   Plaintiff, her father Robert Acosta, Sr., her brother

14  Robert Acosta, Jr., and the latter's wife and her sister-in-law,

15  Susan Acosta, attended the Charger-Raider game in Qualcomm Stadium

16  on October 29, 2000.

17      40.   Plaintiff and Susan Acosta dressed in black for the game,

18  signifying the Raider colors and their support for the visiting

19  team.  Plaintiff was then 5'4" and 140 lbs.

20      41.   Plaintiff's employment at the time in October 2000 was as

21  a bartender, who had served in that capacity for a number of years;

22  and as a newly licensed real estate agent.

23      42.   Prior to the game, Plaintiff and her family held a

24  tailgate party in the parking lot of Qualcomm Stadium.  During the

25  tailgate party and the game, Plaintiff drank lightly, while Susan

26  Acosta drank more heavily.

27      43.   During the game, Plaintiff and Susan Acosta left their

28  seats and, while walking around the stadium, entered Murphy's Club

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF

1  and paraded through the dense, loud and mostly Charger fan crowd,

2  yelling Raider chants.

3      44.  Within two (2) minutes of their entry into Murphy's Club,

4  Plaintiff and Susan Acosta were accosted by Defendant bouncers

5  Fontenette and Oliver and were ejected.  Fontenette, in directing

6  Plaintiff to leave, took hold of her arm, and Plaintiff pulled away

7  and told him not to touch her.  Plaintiff did not refuse to leave,

8  but Fontenette and Oliver, without waiting or speaking further,

9  immediately seized hold of Plaintiff, by the shoulders and legs,

10  and carried her out suspended in air, to loud cheers of the Charger

11  fans.

12      45.  Susan Acosta followed Plaintiff and the bouncers from the

13  Murphy's Club, and engaged in a vulgar exchange with two (2) other

14  patrons as they left, with Susan Acosta also using a racial slur.

15  Plaintiff said nothing and did not resist; nor did she hear and nor

16  was she aware of the verbal exchange between Susan Acosta and the

17  other female patrons.

18      46.  Outside Murphy's Club, Defendants Fontenette and Oliver

19  put Plaintiff down, spoke with both Plaintiff and Susan Acosta, and

20  instructed them not to return to the club.  They did not eject them

21  from the stadium, nor then summon Elite Security nor SDPD Officers.

22  Plaintiff and Susan Acosta walked away after the conversation with

23  the bouncers concluded.

24      47.  Plaintiff and Susan Acosta then returned to their seats.

25  Shortly thereafter, Plaintiff accompanied Susan Acosta when she

26  again left her seat to use the stadium restroom.

27      48.  While walking toward the restroom, Plaintiff and Susan

28  Acosta passed within hailing distance those other patrons with

1  which Susan Acosta had had the verbal exchange as she left Murphy's
2  Club.  The patrons and Susan Acosta resumed their verbal exchange,
3  with the patrons declaring that they thought they had been ejected
4  from the game and would have them ejected from the stadium, and
5  Susan Acosta repeating the racial slur, as she also walked closer
6  to the other patrons.  Plaintiff did not participate in the verbal
7  exchange, and did not join Susan Acosta when she approached the
8  other patrons.

9       49.  The other patrons then walked away, and Susan Acosta went
10 into the restroom, while Plaintiff waited for her outside the door.

11      50.  While Plaintiff was waiting for Susan Acosta outside the
12 door of the stadium restroom, she was approached by Defendant
13 Security Guards Atabekian and Williams, and then by SDPD Officers
14 Hill and Krouss, who asked her to accompany them to the Elite
15 Security Office to check whether she had been previously ejected
16 from the game; and requested identification.

17      51.  Defendant SDPD Officers Hill and Krouss were out of
18 position when they were inside the stadium, having left their posts
19 in the parking lot.

20      52.  Defendant Hill had spoken with security within Murphy's
21 Club.  Defendants Fontenette and Oliver falsely accused Plaintiff
22 of engaging in fighting within the club.

23      53.  Defendant Fontenette claimed that he first saw Plaintiff
24 from a distance within Murphy's Club, trying to physically pull
25 Susan Acosta from the grip of Defendant Oliver.  He claimed that he
26 did not see what originally instigated Oliver to seize Susan
27 Acosta, but that Oliver later told him that Plaintiff and Susan
28 Acosta had harassed and/or been fighting with other patrons.  He

1 also claimed that he then sought to pull Plaintiff from Oliver and

2 Susan Acosta; that Plaintiff then struck and kicked him; that he

3 and Oliver then carried her out of the club; and that he did not

4 seek to eject them from the stadium, but instructed them not to

5 return to the club.

6     54. Defendant Oliver claimed that he first saw Plaintiff from

7 a distance within Murphy's Club, resisting, striking and kicking

8 Defendant Fontenette.  He claimed that he did not see what

9 originally instigated Fontenette to seize Plaintiff, but that

10 Fontenette later told him that Plaintiff had harassed and/or been

11 fighting with other patrons.  He also denied any awareness of Susan

12 Acosta, or any contact with her or any other associate of

13 Plaintiff; but admitted that he aided Fontenette in carrying

14 Plaintiff from the club; and that upon her ejection, she was told

15 not to return to the club.

16     55. Defendant SDPD Officer Hill claims that he spoke with

17 Defendant Fontenette, who informed him that Plaintiff had been

18 fighting in Murphy's Club; had been ejected from the club; and that

19 he intended to eject her and Susan Acosta from the stadium, but

20 they ran way before he could do so.  Defendant Fontenette denies

21 speaking to Defendant Hill prior to Plaintiff's arrest; he did

22 speak with Defendant SDPD Officer Stafford later, and gave the

23 largely false version of events set forth in Paragraph 53 after

24 seeing Plaintiff carried out in hogtied position.

25     56. Defendant Oliver spoke to Defendant Officer SDPD Hill,

26 and gave him the largely falsified version of events set forth in

27 Paragraph 54.

28

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF

57.  Plaintiff responded to Defendants Hill, Krouss, Atebekian and Williams by attempting to say that she had not been ejected, by attempting to explain what had happened at Murphy's Club, and by attempting to say that she did not have identification on her but could retrieve it.

58.  Defendants Hill, Krouss, Atabekian and Williams would not permit Plaintiff to speak, and then ordered her to leave the stadium. When Plaintiff again attempted to speak and explain, she was placed under arrest without warning by Defendant Hill, who with excessive force from the outset attempted, also without warning, to turn Plaintiff around and handcuff her.

59.  When Plaintiff did not respond promptly enough to the initial use of force as above-described, Defendant SDPD Officer Hill then immediately escalated the use of force to the use of deadly force in the form of the carotid choke hold.

60.  Defendant SDPD Officer Hill, apparently unable to utilize lesser levels of force which also require reasonably adequate physical fitness and agility, has frequently used the carotid hold in the past, but is inadequately trained and is incompetent in the circumstances of its lawful use and proper implementation.  He is unfamiliar with SDPD policy and training on its lawful use and proper implementation, and did not utilize those in applying the hold.  Defendant Hill was actually garroting Plaintiff, with her feet off the ground, at times choking her at her windpipe, for up to 1-3 minutes, until he ceased as she went unconscious from lack of air in her lungs.

61.  The manner in which Defendant Hill was choking Plaintiff and suspending her by her neck put her at risk of death or serious

16

1  bodily injury; indeed, a heavier person would likely have suffered
2  a broken neck.

3      62.  The manner in which Defendant Hill choked Plaintiff
4  constituted deadly force, even though Plaintiff at no time used any
5  unlawful force which would justify any use of force by the
6  officers, much less deadly force.

7      63.  As Plaintiff flailed in self-defense and struggle for
8  life while the illegal and improper choke hold was being
9  administered, Defendant SDPD Officer Hill ceased choking Plaintiff
10  and, with the assistance of SDPD Officer Krouss threw Plaintiff to
11  the pavement, face first, and handcuffed her behind her back; then,
12  Officers Hill and Krouss, joined by Officer Stafford, hogtied
13  Plaintiff; then the officers left Plaintiff face down on the
14  pavement in the hogtied position for a substantial period of time;
15  and then later carried her out face down, suspended by her arms and
16  legs, contrary to safe procedures and putting her in great pain in
17  her shoulders.

18      64.  Defendant SDPD Officer Hill, apparently unable to utilize
19  lesser levels of force which also require reasonably adequate
20  physical fitness and agility, has frequently used the hogtie
21  restraint in the past, but is inadequately trained and is
22  incompetent in the circumstances of its lawful use and proper
23  implementation.  He is unfamiliar with SDPD policy and training on
24  its lawful use and proper implementation, and did not utilize those
25  in applying the restraint or in carrying the restrained suspect.
26  He is also unfamiliar with other lesser forms of restraint for
27  resisting offenders, including those available when there are other
28  officers present to assist.

65. Defendant SDPD Officers Krouss and Stafford are inadequately trained and incompetent in the circumstances for lawful use and proper implementation of the maximum restraint "hogtying". They are unfamiliar with SDPD policy and training on its lawful use and proper implementation, and did not utilize those in applying the restraint or in carrying the restrained suspect. They are also unfamiliar with other lesser forms of restraint for resisting offenders, including those available when there are other officers present to assist.

66. The manner in which Defendants Hill, Krouss and Stafford controlled and restrained Plaintiff constituted deadly force, even though Plaintiff at no time used any unlawful force which would justify any use of force by the officers, much less deadly force.

67. The manner in which Defendants Hill, Krouss and Stafford hogtied Plaintiff, then placed her face down on the pavement, then carried her our face down and suspended by her limbs, put her at risk of death or serious bodily injury; indeed, a heavier person would likely have suffered death or serious injury.

68. Defendant Elite Security guards Atebekian and Williams assisted SDPD Officers Hill and Krouss in the use of force on Plaintiff while she was being choked and hogtied, each of them also using separately and in concert unlawful, unnecessary, unreasonable and excessive force on Plaintiff.

69. Plaintiff was carried to the holding area in the stadium, wherein the videotaping system was accidentally not turn on, leaving no film record.

70. Defendant SDPD Officer Cimarrusti permitted Susan Acosta, who had emerged from the restroom in the interim, to go and

18

retrieve Plaintiff's father, who she identified as a peace officer. Officer Cimarrusti informed Officer Acosta where the holding area was located, but officers in the holding area refused to permit Officer Acosta to see or speak with his daughter.

71.   Plaintiff suffered numerous bruises and soreness on her body, and injury and soreness to her shoulders, neck and back area.

72.   Plaintiff was arrested initially for trespass, and thereafter arrested and charged with misdemeanors of assault and battery on peace officers; assault and battery on security guards; and resisting arrest by police officers.

73.   There was no probable cause for the warrantless arrest of Plaintiff on any of the charges, in violation of her rights under the Fourth Amendment.

74.   The conduct of the Defendant SDPD Officers Hill, Krouss and Stafford constituted unlawful, unnecessary, excessive and unreasonable use of force, in violation of her rights under the Fourth Amendment.

75.   The unlawful, unnecessary, unreasonable and excessive force employed in the arrest was at all times unreasonable under the totality of the circumstances and thereby violated the Fourth Amendment rights of Plaintiff.

76.   Thereafter, the individual SDPD Officers, and each of them, filed falsified police reports, also containing material omissions concerning the unlawful conduct of defendants and the justifying circumstances for Plaintiff's conduct; which misrepresented the true facts of what had occurred, falsely stating and suggesting that Plaintiff had committed crimes in Murphy's Club and in response to efforts to eject and arrest her; and falsely

1   characterized events to support false conclusions that there was

2   probable cause for Plaintiff's arrest and subsequent prosecution on

3   those charges, and false conclusions that the use of force by

4   Plaintiff justified the use of force by the officers.

5      77.   Thereafter, the individual Elite Security Guards and

6   Murphy's Club bouncers, and each of them, gave false statements

7   also containing material omissions concerning the unlawful conduct

8   of defendants and the justifying circumstances for Plaintiff's

9   conduct; which misrepresented the true facts of what had occurred,

10   falsely stating and suggesting that Plaintiff had committed crimes

11   in Murphy's Club and in response to efforts to eject and arrest

12   her; and falsely characterized events to support false conclusions

13   that there was probable cause for Plaintiff's ejection, arrest and

14   subsequent prosecution on those charges, and false conclusions that

15   the use of force by Plaintiff justified the use of force by the

16   bouncers, security guards and officers.

17      78.   Based on the falsified submissions of the individual

18   Defendants, the San Diego Office of City Attorney issued a criminal

19   misdemeanor complaint against Plaintiff - i.e. as a result of the

20   aforementioned false reports and statements, and the underlying

21   unlawful conduct, Plaintiff was prosecuted on the charges for which

22   she was arrested.   Those false reports and statements were

23   submitted to maliciously prosecute Plaintiff.

24      79.   The aforementioned false reports and statements were

25   intended to cause the prosecution and conviction of Plaintiff on

26   false charges in order to justify the unlawful, unnecessary,

27   excessive and unreasonable use of force by the individual defendant

28   bouncers, officers and security guards; to justify the unlawful and

1   unreasonable ejection and arrest of Plaintiff; and to protect each
2   and all of them, and their employers and principals, from the
3   threat and risk of criminal and civil sanction and/or civil damages
4   and other remedies.   This constitutes a malicious, unlawful and
5   improper ulterior motive for the prosecution and an abuse by the
6   individual defendants of the process of the criminal courts.

7      80.  There was no probable cause for the malicious prosecution
8   of Plaintiff on any of the charges, nor for the abuse of process
9   directed to Plaintiff, in violation of her rights under the Fourth
10  Amendment.

11     81.  The false arrest and unlawful use of force by the
12  individual SDPD Officer defendants Hill, Krouse and Stafford denied
13  Plaintiff's free speech rights under the First Amendment when she
14  sought to exercise those rights in the initial contact with
15  Plaintiff, when she sought to explain herself and clarify the
16  circumstances which were being misapprehended and misrepresented.

17     82.  The malicious prosecution and abuse of process by all of
18  the individual defendants were designed to frustrate Plaintiff in
19  the anticipated exercise of her First Amendment rights to seek
20  administrative or civil redress for their false arrest and unlawful
21  use of force, and the other misconduct leading to those abuses of
22  authority and criminal acts against Plaintiff.

23     83.  On June 19, 2001, following trial by jury, Plaintiff was
24  acquitted on all charges.

25              **FEDERAL CLAIMS AGAINST ENTITY DEFENDANTS**

26     84.  Plaintiff incorporates by reference herein Paragraphs
27  1-83 of this Complaint, as though fully set forth.

28

21

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF

85.   Training in use of force, particularly in the lawful circumstances and proper implementation of restraints which pose a reasonably anticipated potential for death or serious bodily injury, and the preparation of police reports is of such importance in preserving the rights of persons affected that the failure to provide it adequately would constitute deliberate indifference to the constitutional rights of those whose rights are violated because of their improper or unlawful use.

86.   The training of the SDPD Defendants was inadequate in that their conduct herein has been manifestly inconsistent with the standards of training mandated by state and federal law, designed and intended to accommodate the constitutional obligations of police officers to respect the constitutional rights of persons with whom police officers come into contact while performing their law enforcement responsibilities.

87.   The aforementioned conduct of the individual SDPD Officers was caused by the policies, and lack thereof, and by the lack of adequate training and supervision by the City and SDPD; further, the latter entities ratified the misconduct of these officers despite being aware of the totality of the true circumstances.

88.   The aforementioned conduct of the individual Murphy's Club bouncers and Elite Security guards SDPD was caused by the policies, and lack thereof, and by the  lack of adequate training and supervision by all of the entity defendants herein; further, the latter entities ratified the misconduct of these officers despite being aware of the totality of the true circumstances; further, the entity defendants herein have been negligent and acted

1  in reckless disregard for the rights of Plaintiff and other patrons

2  by their inadequate policies, as well as the hiring, retention,

3  training and supervision of the individual defendants by their

4  respective employers and principals having control over these

5  matters, and the duty to exercise it, by law or contract.

6       89.  The individual Defendants, and each of them, in engaging

7  in the aforementioned conduct, intended to deprive Plaintiff of her

8  liberty without due process of law.

9       90.  The individual Defendants, and each of them, in engaging

10 in the aforementioned conduct, acted arbitrarily and capriciously

11 --- *i.e.* without a rational basis therefor.

12      91.  Defendant SDPD Officers Hill, Krouss and Stafford, in

13 their conduct once plaintiff was in custody, acted with callous

14 indifference to Plaintiff's rights and personal well-being, in

15 violation of her rights under the Due Process Clause of the

16 Fourteenth Amendment.

17 **PENDENT STATE CLAIMS**

18     Plaintiff hereby further alleges the following state claims

19 under the laws and Constitution of the State of California under

20 the pendent jurisdiction of the federal courts for claims related

21 to the above-described federal question civil rights claims under

22 28 U.S.C. sec.1343; 42 U.S.C. sec.1983; and the First, Fourth and

23 Fourteenth Amendments and Article III of the Constitution of the

24 United States.

25 **FIRST STATE CAUSE OF ACTION**
   **[Assault and Battery]**

26 **[MURPHY'S CLUB; FONTENETTE; OLIVER;**
   **DOES VI-X & XVII-XVIII]**

27

28     92.  Plaintiff incorporates by reference herein Paragraphs

1 │ 1-91 of this Complaint, as though fully set forth.

2 │     93.  On October 29, 2000, the Chargers played a football game,

3 │ hosting the Oakland Raiders, at Qualcomm Stadium.  Murphy's Club

4 │ was open for business during the game, with Defendants Fontenette

5 │ and Oliver on duty as bouncers; Elite Security was providing

6 │ security, with Defendants Williams and Atabekian on duty; and

7 │ Defendant SDPD Officers Hill, Krouss, Stafford and Cimarrusti were

8 │ on duty, with Hill and Krouss assigned as a team to the parking lot

9 │ outside the stadium, and Stafford and Cimarrusti assigned as a team

10 │ within the stadium.

11 │     94.  Defendant Murphy's Club bouncers Fontenette and Oliver,

12 │ by plaintiff's estimate, were over 6' tall and over 250 lbs. each.

13 │     95.  Defendant Elite Security guards Williams and Atabekian,

14 │ by plaintiff's estimate, were of average height and weight.

15 │     96.  Defendant SDPD Officer Hill was 6'0" and 325 lbs. and is

16 │ grossly out of shape.  Defendant SDPD Officer Krouss was 6'4" and

17 │ 300 lbs.  Defendant SDPD Officers Stafford and Cimarrusti, by

18 │ plaintiff's estimate, were of average height and weight.

19 │     97.  Plaintiff, her father Robert Acosta, Sr., her brother

20 │ Robert Acosta, Jr., and the latter's wife and her sister-in-law,

21 │ Susan Acosta, attended the Charger-Raider game in Qualcomm Stadium

22 │ on October 29, 2000.

23 │     98.  Plaintiff and Susan Acosta dressed in black for the game,

24 │ signifying the Raider colors and their support for the visiting

25 │ team.  Plaintiff was then 5'4" and 140 lbs.

26 │     99.  Plaintiff's employment at the time in October 2000 was as

27 │ a bartender, who had served in that capacity for a number of years;

28 │ and as a newly licensed real estate agent.

100.   Prior to the game, Plaintiff and her family held a tailgate party in the parking lot of Qualcomm Stadium.  During the tailgate party and the game, Plaintiff drank lightly, while Susan Acosta drank more heavily.

101.   During the game, Plaintiff and Susan Acosta left their seats and, while walking around the stadium, entered Murphy's Club and paraded through the dense, loud and mostly Charger fan crowd, yelling Raider chants.

102.   Within two (2) minutes of their entry into Murphy's Club, Plaintiff and Susan Acosta were accosted by Defendant bouncers Fontenette and Oliver and were ejected.  Fontenette, in directing Plaintiff to leave, took hold of her arm, and Plaintiff pulled away and told him not to touch her.  Plaintiff did not refuse to leave, but Fontenette and Oliver, without waiting or speaking further, immediately seized hold of Plaintiff, by the shoulders and legs, and carried her out suspended in air, to loud cheers of the Charger fans.

103.   Susan Acosta followed Plaintiff and the bouncers from the Murphy's Club, and engaged in a vulgar exchange with two (2) other patrons as they left, with Susan Acosta also using a racial slur.  Plaintiff said nothing and did not resist; nor did she hear and nor was she aware of the verbal exchange between Susan Acosta and the other female patrons.

104.   Outside Murphy's Club, Defendants Fontenette and Oliver put Plaintiff down, spoke with both Plaintiff and Susan Acosta, and instructed them not to return to the club.  They did not eject them from the stadium, nor then summon Elite Security nor SDPD Officers.

1  Plaintiff and Susan Acosta walked away after the conversation with
2  the bouncers concluded.

**SECOND STATE CAUSE OF ACTION**
**[Assault and Battery]**
**[CITY; QUALCOMM STADIUM; CHARGERS; ELITE SECURITY;**
**HILL; KROUSS; STAFFORD; ATEBEKIAN; WILLIAMS;**
**DOES I-V, XI-XVI & XIX-XX]**

6  105.  Plaintiff incorporates by reference herein Paragraphs
7  1-104 of this Complaint, as though fully set forth.

8  106.  Plaintiff and Susan Acosta then returned to their seats.
9  Shortly thereafter, Plaintiff accompanied Susan Acosta when she
10 again left her seat to use the stadium restroom.

11 107.  While walking toward the restroom, Plaintiff and Susan
12 Acosta passed within hailing distance those other patrons with
13 which Susan Acosta had had the verbal exchange as she left Murphy's
14 Club.  The patrons and Susan Acosta resumed their verbal exchange,
15 with the patrons declaring that they thought they had been ejected
16 from the game and would have them ejected from the stadium, and
17 Susan Acosta repeating the racial slur, as she also walked closer
18 to the other patrons.  Plaintiff did not participate in the verbal
19 exchange, and did not join Susan Acosta when she approached the
20 other patrons.

21 108.  The other patrons then walked away, and Susan Acosta
22 went into the restroom, while Plaintiff waited for her outside the
23 door.

24 109.  While Plaintiff was waiting for Susan Acosta outside the
25 door of the stadium restroom, she was approached by Defendant
26 Security Guards Atebekian and Williams, and then by SDPD Officers
27 Hill and Krouss, who asked her to accompany them to the Elite

28

26

1  Security Office to check whether she had been previously ejected
2  from the game, and requested identification.

3      110.   Defendant SDPD Officers Hill and Krouss were out of
4  position when they were inside the stadium, having left their posts
5  in the parking lot.

6      111.   Defendant Hill had spoken with security within Murphy's
7  Club.   Defendants Fontenette and Oliver falsely accused Plaintiff
8  of engaging in fighting within the club.

9      112.   Defendant Fontenette claimed that he first saw Plaintiff
10 from a distance within Murphy's Club, trying to physically pull
11 Susan Acosta from the grip of Defendant Oliver.  He claimed that he
12 did not see what originally instigated Oliver to seize Susan
13 Acosta, but that Oliver later told him that Plaintiff and Susan
14 Acosta had harassed and/or been fighting with other patrons.  He
15 also claimed that he then sought to pull Plaintiff from Oliver and
16 Susan Acosta; that Plaintiff then struck and kicked him; that he
17 and Oliver then carried her out of the club; and that he did not
18 seek to eject them from the stadium, but instructed them not to
19 return to the club.

20     113.   Defendant Oliver claimed that he first saw Plaintiff
21 from a distance within Murphy's Club, resisting, striking and
22 kicking Defendant Fontenette.  He claimed that he did not see what
23 originally instigated Fontenette to seize Plaintiff, but that
24 Fontenette later told him that Plaintiff had harassed and/or been
25 fighting with other patrons.  He also denied any awareness of Susan
26 Acosta, or any contact with her or any other associate of
27 Plaintiff; but admitted that he aided Fontenette in carrying
28

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF

1 | Plaintiff from the club; and that upon her ejection, she was told
2 | not to return to the club.

3 |     114.   Defendant SDPD Officer Hill claims that he spoke with
4 | Defendant Fontenette, who informed him that Plaintiff had been
5 | fighting in Murphy's Club; had been ejected from the club; and that
6 | he intended to eject her and Susan Acosta from the stadium, but
7 | they ran way before he could do so.   Defendant Fontenette denies
8 | speaking to Defendant Hill prior to Plaintiff's arrest; he did
9 | speak with Defendant SDPD Officer Stafford later, and gave the
10 | largely false version of events set forth in Paragraph 53 after
11 | seeing Plaintiff carried out in hogtied position.

12 |     115.   Defendant Oliver spoke to Defendant Officer SDPD Hill,
13 | and gave him the largely falsified version of events set forth in
14 | Paragraph 54.

15 |     116.   Plaintiff responded to Defendants Hill, Krouss,
16 | Atebekian and Williams by attempting to say that she had not been
17 | ejected, by attempting to explain what had happened at Murphy's
18 | Club, and by attempting to say that she did not have identification
19 | on her but could retrieve it.

20 |     117.   Defendants Hill, Krouss, Atabekian and Williams would
21 | not permit Plaintiff to speak, and then ordered her to leave the
22 | stadium. When Plaintiff again attempted to speak and explain, she
23 | was placed under arrest without warning by Defendant Hill, who with
24 | excessive force from the outset attempted, also without warning, to
25 | turn Plaintiff around and handcuff her.

26 |     118.   When Plaintiff did not respond promptly enough to the
27 | initial use of force as above-described, Defendant SDPD Officer
28 |

1   Hill then immediately escalated the use of force to the use of

2   deadly force in the form of the carotid choke hold.

3      119.   Defendant SDPD Officer Hill, apparently unable to

4   utilize lesser levels of force which also require reasonably

5   adequate physical fitness and agility, has frequently used the

6   carotid hold in the past, but is inadequately trained and is

7   incompetent in the  circumstances of its lawful use and proper

8   implementation.  He is unfamiliar with SDPD policy and training on

9   its lawful use and proper implementation, and did not utilize those

10  in applying the hold.   Defendant Hill was actually garroting

11  Plaintiff, with her feet off the ground, at times choking her at

12  her windpipe, for up to 1-3 minutes, until he ceased as she went

13  unconscious from lack of air in her lungs.

14     120.  The manner in which Defendant Hill was choking Plaintiff

15  and suspending her by her neck put her at risk of death or serious

16  bodily injury; indeed, a heavier person would likely have suffered

17  a broken neck.

18     121.   The manner in which Defendant Hill choked Plaintiff

19  constituted deadly force, even though Plaintiff at no time used any

20  unlawful force which would justify any use of force by the

21  officers, much less deadly force.

22     122.  As Plaintiff flailed in self-defense and struggle for

23  life while the illegal and improper choke hold was being

24  administered, Defendant SDPD Officer Hill ceased choking Plaintiff

25  and, with the assistance of SDPD Officer Krouss threw Plaintiff to

26  the pavement, face first, and handcuffed her behind her back; then,

27  Officers Hill and Krouss, joined by Officer Stafford, hogtied

28  Plaintiff; then the officers left Plaintiff face down on the

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF

1 pavement in the hogtied position for a substantial period of time;
2 and then later carried her out face down, suspended by her arms and
3 legs, contrary to safe procedures and putting her in great pain in
4 her shoulders.

5     123. Defendant SDPD Officer Hill, apparently unable to utilize
6 lesser levels of force which also require reasonably adequate
7 physical fitness and agility, has frequently used the hogtie
8 restraint in the past, but is inadequately trained and is
9 incompetent in the circumstances of its lawful use and proper
10 implementation.  He is unfamiliar with SDPD policy and training on
11 its lawful use and proper implementation, and did not utilize those
12 in applying the restraint or in carrying the restrained suspect.
13 He is also unfamiliar with other lesser forms of restraint for
14 resisting offenders, including those available when there are other
15 officers present to assist.

16     124. Defendant SDPD Officers Krouss and Stafford are
17 inadequately trained and incompetent in the circumstances for
18 lawful use and proper implementation of the maximum restraint
19 "hogtying".  They are unfamiliar with SDPD policy and training on
20 its lawful use and proper implementation, and did not utilize those
21 in applying the restraint or in carrying the restrained suspect.
22 They are also unfamiliar with other lesser forms of restraint for
23 resisting offenders, including those available when there are other
24 officers present to assist.

25     125.  The manner in which Defendants Hill, Krouss and Stafford
26 controlled and restrained Plaintiff constituted deadly force, even
27 though Plaintiff at no time used any unlawful force which would
28 justify any use of force by the officers, much less deadly force.

30

126.   The manner in which Defendants Hill, Krouss and Stafford hogtied Plaintiff, then placed her face down on the pavement, then carried her our face down and suspended by her limbs, put her at risk of death or serious bodily injury; indeed, a heavier person would likely have suffered death or serious injury.

127.   Defendant Elite Security guards Atebekian and Williams assisted SDPD Officers Hill and Krouss in the use of force on Plaintiff while she was being choked and hogtied, each of them also using separately and in concert unlawful, unnecessary, unreasonable and excessive force on Plaintiff.

128.   Plaintiff was carried to the holding area in the stadium, wherein the videotaping system was accidentally not turn on, leaving no film record.

129.   Defendant SDPD Officer Cimarrusti permitted Susan Acosta, who had emerged from the restroom in the interim, to go and retrieve Plaintiff's father, who she identified as a peace officer. Officer Cimarrusti informed Officer Acosta where the holding area was located, but officers in the holding area refused to permit Officer Acosta to see or speak with his daughter.

130.   Plaintiff suffered numerous bruises and soreness on her body, and injury and soreness to her shoulders, neck and back area.

131.   The conduct of the Defendant SDPD Officers Hill, Krouss and Stafford constituted unlawful, unnecessary, excessive and unreasonable use of force.

132.   The unlawful, unnecessary, unreasonable and excessive force employed in arrest was at all times unreasonable under the totality of the circumstances.

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF

**THIRD STATE CAUSE OF ACTION**
**[False Arrest & Imprisonment]**
**[CITY; QUALCOMM STADIUM; CHARGERS; ELITE SECURITY;**
**MURPHY'S CLUB; HILL; KROUSS; STAFFORD; OLIVER**
**FONTENETTE; ATEBEKIAN; WILLIAMS; DOES I-XX]**

133.  Plaintiff incorporates by reference herein Paragraphs 1-132 of this Complaint, as though fully set forth.

134.  Plaintiff was arrested initially for trespass, and thereafter arrested and charged with misdemeanors of assault and battery on peace officers; assault and battery on security guards; and resisting arrest by police officers.

135.  There was no probable cause for the warrantless arrest of Plaintiff on any of the charges.

136.  Plaintiff did not commit any offense in the presence of the individual defendant SDPD officers, nor in the presence of any other sworn peace officer.

**FOURTH CAUSE OF ACTION**
**[Unlawful Ejection & Discrimination Under Unruh Act]**
**[CITY; QUALCOMM STADIUM; CHARGERS; ELITE SECURITY;**
**MURPHY'S CLUB; HILL; KROUSS; STAFFORD; OLIVER**
**FONTENETTE; ATEBEKIAN; WILLIAMS; DOES I-XX]**

137.  Plaintiff incorporates by reference herein Paragraphs 1-136 of this Complaint, as though fully set forth.

138.  Defendants Qualcomm Stadium and Chargers are public accommodations as specified under the Unruh Act, California Civil Code secs. 50 et seq.

139.  Each and all of the acts of the individual defendants other than defendant SDPD Officer Cimmarrusti, caused and resulted in the ejection of Plaintiff from the stadium and other discriminatory acts, specified above, and directed against Plaintiff, in violation of the Unruh Act.

32

140.   The conduct of the individual defendants, other than defendant SDPD Officer Cimmarrusti, was at all times unlawfully discriminatory and arbitrary and capricious, and without lawful justification under the Unruh Act.

### FIFTH STATE CAUSE OF ACTION
### [Malicious Prosecution]
### [All Defendants]

141.   Plaintiff incorporates by reference herein Paragraphs 1-140 of this Complaint, as though fully set forth.

142.   Thereafter, the individual SDPD Officers, and each of them, filed falsified police reports, also containing material omissions concerning the unlawful conduct of defendants and the justifying circumstances for Plaintiff's conduct; which misrepresented the true facts of what had occurred, falsely stating and suggesting that Plaintiff had committed crimes in Murphy's Club and in response to efforts to eject and arrest her; and falsely characterized events to support false conclusions that there was probable cause for Plaintiff's arrest and subsequent prosecution on those charges, and false conclusions that the use of force by Plaintiff justified the use of force by the officers.

143.   Thereafter, the individual Elite Security Guards and Murphy's Club bouncers, and each of them, gave false statements also containing material omissions concerning the unlawful conduct of defendants and the justifying circumstances for Plaintiff's conduct; which misrepresented the true facts of what had occurred, falsely stating and suggesting that Plaintiff had committed crimes in Murphy's Club and in response to efforts to eject and arrest her; and falsely characterized events to support false conclusions that there was probable cause for Plaintiff's ejection, arrest and

33

1 subsequent prosecution on those charges, and false conclusions that

2 the use of force by Plaintiff justified the use of force by the

3 bouncers, security guards and officers.

4     144.  Based on the falsified submissions of the individual

5 Defendants, the San Diego Office of City Attorney issued a criminal

6 misdemeanor complaint against Plaintiff - *i.e.* as a result of the

7 aforementioned false reports and statements, and the underlying

8 unlawful conduct, Plaintiff was prosecuted on the charges for which

9 she was arrested.   Those false reports and statements were

10 submitted to maliciously prosecute Plaintiff.

11     145.  The individual defendants sought the prosecution of

12 Plaintiff on the criminal charges for which she was prosecuted.

13     146.  But for the falsified and materially misleading reports

14 and statements as above-described, there was no probable cause for

15 any of the criminal charges on which Plaintiff was prosecuted.

16     147.  The criminal prosecution was concluded with a judgment

17 of acquittal in favor of Plaintiff - *i.e.*   On June 19, 2001,

18 following trial by jury, Plaintiff was acquitted on all charges.

19     148.  At all relevant times herein, the individual defendants,

20 in seeking the prosecution of Plaintiff and submitting the

21 falsified and materially misleading reports and statements, as

22 above-described, acted with malice.

### SIXTH STATE CAUSE OF ACTION
### [Abuse of Process]
### [All Defendants]

25     149.  Plaintiff incorporates by reference herein Paragraphs

26 1-148 of this Complaint, as though fully set forth.

27     150.  The aforementioned false reports and statements were

28 intended to cause the prosecution and conviction of Plaintiff on

1  false charges in order to justify the unlawful, unnecessary,
2  excessive and unreasonable use of force by the individual defendant
3  bouncers, officers and security guards; to justify the unlawful and
4  unreasonable ejection and arrest of Plaintiff; and to protect each
5  and all of them, and their employers and principals, from the
6  threat and risk of criminal and civil sanction and/or civil damages
7  and other remedies.  This constitutes a malicious, unlawful and
8  improper ulterior motive for the prosecution and an abuse by the
9  individual defendants of the process of the criminal courts.

10      151.  There was no probable cause for the prosecution of
11  Plaintiff on any of the charges, nor for the abuse of process
12  directed to Plaintiff.

**SEVENTH STATE CAUSE OF ACTION**
**[Denial of Free Speech Rights]**
**[All Defendants]**

15      152.  Plaintiff incorporates by reference herein Paragraphs
16  1-151 of this Complaint, as though fully set forth.

17      153.  The false arrest and unlawful use of force by the
18  individual SDPD Officer defendants Hill, Krouse and Stafford denied
19  Plaintiff's free speech rights under the California Constitution
20  when she sought to exercise those rights in the initial contact
21  with Plaintiff, when she sought to explain herself and clarify the
22  circumstances which were being misapprehended and misrepresented.

23      154.  The malicious prosecution and abuse of process by all of
24  the individual defendants were designed to frustrate Plaintiff in
25  the anticipated exercise of her free speech and petition rights
26  under the California Constitution to seek administrative or civil
27  redress for their false arrest and unlawful use of force, and the

28

35

1  other misconduct leading to those abuses of authority and criminal

2  acts against Plaintiff.

### EIGHTH STATE CAUSE OF ACTION
### [Intentional Infliction of Emotional Distress]
### [All Defendants]

5  155.  Plaintiff incorporates by reference herein Paragraphs

6  1-154 of this Complaint, as though fully set forth.

7  156.  Defendants, in engaging the aforementioned acts, acted

8  with malice, intended to inflict emotional distress, and did

9  inflict emotional distress, engaging in outrageous conduct.

### NINTH STATE CAUSE OF ACTION
### [Negligent Infliction of Emotional Distress]
### [All Defendants]

12  157.  Plaintiff incorporates by reference herein Paragraphs

13  1-156 of this Complaint, as though fully set forth.

14  158.  Defendants had a duty of care toward Plaintiff

15  throughout their actions in respect to her, yet negligently failed

16  to perform that duty, causing her great emotional distress.

### TENTH STATE CAUSE OF ACTION
### [Breach of Contract]
### [City; Qualcomm; Chargers; Does I-V & XVI]

19  159.  Plaintiff incorporates by reference herein Paragraphs

20  1-158 of this Complaint, as though fully set forth.

21  160.  Plaintiff had a valid ticket to attend the Raiders-

22  Chargers football game on October 29, 2000, and said ticket

23  constituted a contract between Plaintiff and Defendants City,

24  Qualcomm and Chargers.

25  161.  All of the acts and omissions of the individual

26  defendants, acting as agents of Defendants City, Qualcomm &

27  Chargers, breached the contract terms of Plaintiff's admission

28  ticket to the football game.

### ELEVENTH STATE CAUSE OF ACTION
**[Breach of Covenant of Good Faith and Fair Dealing]**
**[City; Qualcomm; Chargers; Does I-V & XVI]**

162. Plaintiff incorporates by reference herein Paragraphs 1-161 of this Complaint, as though fully set forth.

163. Implicit in the ticket-contract was a covenant of good faith and fair dealing.

164. Under said covenant, Plaintiff was entitled to the quiet enjoyment of the sporting contest and to be free of any unlawful conduct by agents of the City, Qualcomm and Chargers.

165. Defendants City, Qualcomm and Chargers, and their agents, had a duty, individually and collectively, to comply with their contractual obligations to Plaintiff, including any implied covenants and any duties, responsibilities and restraints imposed by operation of law; and a duty to ensure that their respective agents complied as well.

166. Defendants City, Qualcomm and Chargers, and their agents, individually and collectively, failed to comply with those duties as specified in Paragraph 117, and intentionally and/or negligently failed to ensure that their respective agents complied.

167. All of the acts and omissions of the individual defendants, acting as agents of Defendants City, Qualcomm & Chargers, breached the aforementioned covenants.

### TWELFTH STATE CAUSE OF ACTION
**[Negligent Hiring, Supervision and Retention; Ratification]**
**[All Entity Defendants]**

168. Plaintiff incorporates by reference herein Paragraphs 1-167 of this Complaint, as though fully set forth.

169. The entity Defendants individually and collectively had a duty of care toward Plaintiff and all other game patrons, by

1  contract, agreement or by operation of law, for the lawful and
2  objectively reasonable business management and/or supervision of
3  the individual defendants, yet negligently failed to perform that
4  duty.

5  170.  The entity defendants individually and collectively had
6  a duty of care toward Plaintiff and all other game patrons, by
7  contract, agreement or by operation of law, not to retain the
8  services of officers, security personnel or security companies who
9  fail to conduct business, or to supervise subordinates or
10  subordinate entities, in accordance with the law and objectively
11  reasonable business management and supervisory practices; and to
12  make such periodic inquiries and investigations as necessary to
13  stay reasonably informed of the manner in which their agents
14  subordinate entities perform their duties and in response to
15  specific complaints made by patrons.  The entity defendants
16  individually and collectively negligently failed to perform those
17  duties.

18  171.  The entity defendants individually and collectively had
19  a duty of care toward Plaintiff and all other game patrons, by
20  contract, agreement or by operation of law, not to hire, contract
21  with or retain the services of officer, security personnel or
22  security companies who fail to conduct business or to deal with
23  patrons in accordance with the law and objectively reasonable
24  security and law enforcement practices; and to make such periodic
25  inquiries and investigations as necessary to stay reasonably
26  informed of the manner in which their agents and subordinate
27  entities perform their duties and in response to specific
28  complaints made by patrons or other such notice.  The entity

1  defendants individually and collectively negligently failed to
2  perform those duties.

3      172.   Training in use of force, particularly in the lawful
4  circumstances and proper implementation of restraints which pose a
5  reasonably anticipated potential for death or serious bodily
6  injury, and the preparation of police reports is of such importance
7  in preserving the rights of persons affected that the failure to
8  provide it adequately would constitute deliberate indifference to
9  the legal and constitutional rights of those whose rights are
10 violated because of their improper or unlawful use.

11     173.   The training of the SDPD Defendants was inadequate in
12 that their conduct herein has been manifestly inconsistent with the
13 standards of training mandated by state and federal law, designed
14 and intended to accommodate the constitutional obligations of
15 police officers to respect the constitutional rights of persons
16 with whom police officers come into contact while performing their
17 law enforcement responsibilities.

18     174.   The aforementioned conduct of the individual SDPD
19 Officers was caused by the policies, and lack thereof, and by the
20 lack of adequate training and supervision by the City and SDPD;
21 further, the latter entities ratified the misconduct of these
22 officers despite being aware of the totality of the true
23 circumstances.

24     175.   The aforementioned conduct of the individual Murphy's
25 Club bouncers and Elite Security guards SDPD was caused by the
26 policies, and lack thereof, and by the  lack of adequate training
27 and supervision by all of the entity defendants herein; further,
28 the latter entities ratified the misconduct of these officers

COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF

1  despite being aware of the totality of the true circumstances;

2  further, the entity defendants herein have been negligent and acted

3  in reckless disregard for the rights of Plaintiff and other patrons

4  by their inadequate policies, as well as the hiring, retention,

5  training and supervision of the individual defendants by their

6  respective employers and principals having control over these

7  matters, and the duty to exercise it, by law or contract.

8  ### COMMON DAMAGES ALLEGATIONS AS TO ALL DEFENDANTS
   ### AND ALL FEDERAL AND PENDENT STATE CLAIMS

9  176. Each of the individual Defendants participated in and/or

10  proximately caused the aforementioned unlawful conduct, and acted

11  in concert with the other named defendants and other officers and

12  security guards, whose identities and/or extent of involvement are

13  not yet known to plaintiffs.

14  177.  Plaintiff incurred approximately $50,000 in legal costs

15  and attorneys' fees to defend herself against the malicious

16  criminal prosecution and abuse of process, which were caused by the

17  aforementioned conduct of the individual defendants.

18  178.  Plaintiff incurred medical expenses for her physical

19  injuries, which were caused by the aforementioned conduct of the

20  individual defendants.

21  179.  Plaintiff incurred loss of employment income because of

22  her arrest, injuries and the malicious prosecution, which were

23  caused by the aforementioned conduct of the individual defendants.

24  180.  Plaintiff suffered substantial pain, emotional distress

25  and anguish, humiliation and substantial damage to her personal and

26  professional reputation because of her arrest, injuries and the

27

28

1  malicious prosecution, which were caused by the aforementioned

2  conduct of the individual defendants.

3     181.  The conduct of the individual defendants, and each of

4  them, caused Plaintiff's physical injuries.

5     182.  The conduct of the individual defendants, and each of

6  them, caused Plaintiff's arrest and incarceration until she was

7  released on bail.

8     183.  The conduct of the individual defendants, and each of

9  them, caused Plaintiff's prosecution on criminal charges, and the

10 legal costs she incurred.

11     184.  The conduct of the individual defendants, and each of

12 them, caused Plaintiff's loss of income.

13     185.  The conduct of the individual defendants, and each of

14 them, caused Plaintiff's pain, emotional distress and anguish,

15 humiliation and substantial damage to her personal and professional

16 reputation.

17     186.  The acts and omissions of the entity defendants, and

18 each of them, caused Plaintiff's physical injuries.

19     187.  The acts and omissions of the entity defendants, and

20 each of them, caused Plaintiff's arrest and incarceration until she

21 was released on bail.

22     188.  The acts and omissions of the entity defendants, and

23 each of them, caused Plaintiff's prosecution on criminal charges,

24 and the legal costs she incurred.

25     189.  The acts and omissions of the entity defendants, and

26 each of them, caused Plaintiff's loss of income.

27     190.  The acts and omissions of the entity defendants, and

28 each of them, caused Plaintiff's pain, emotional distress and

1  anguish, humiliation and substantial damage to her personal and
2  professional reputation.

3      191.   The Defendants and each of them, in engaging in the
4  aforementioned conduct, intended to act as they did, and intended
5  to violate Plaintiff's rights.

6      192.   As a direct and proximate result of the aforementioned
7  acts and/or omissions of the Defendants and each of them,
8  Plaintiff:

9          a.   Has been subjected to police terror, accompanied by
10         apparent threat to her life by strangulation, and will
11         continue in the future to be in fear of such police terror;

12         b.   Has suffered assault and battery, and other painful
13         physically abusive treatment while being arrested and while in
14         custody;

15         c.   Has suffered the humiliation and other anguish of
16         arrest, incarceration followed by a period in custody, and
17         having a serious criminal arrest record which can influence
18         future state professional licensing decisions;

19         d.   Has suffered through the burdens, fear, humiliation,
20         distress and anguish of a criminal prosecution with the
21         attendant risks of conviction, incarceration and a criminal
22         record;

23         e.   Has suffered loss of income;

24         f.   Has incurred medical and related expenses for her
25         injuries;

26         g.   Incurred legal expenses in the underlying criminal
27         prosecution;

28         h.   Has suffered a deprivation of her First Amendment

1    rights, and fears to exercise the rights in the future;

2         i.  Has suffered extreme humiliation, pain, emotional

3    distress and mental anguish, from the date of said acts until

4    now, and will continue to so suffer in the future;

5         j.  Lost the value of her ticket to the Raiders-Chargers

6    game on October 29, 20000.

7    193.  At all relevant times herein, the individual defendants,

8    and each of them, acted with malice and reckless disregard for

9    plaintiffs' constitutional rights under the First, Fourth and

10   Fourteenth Amendments to the Constitution of the United States,

11   entitling Plaintiff to punitive damages from the individual

12   defendants and each of them.

13   194.  Because of the ratification by the entity defendants of

14   the misconduct of the individual defendants, and each of them,

15   Plaintiff is entitled to punitive damages against each of the

16   entity defendants except the City of San Diego.

17                              **PRAYER**

18   **WHEREFORE**, Plaintiff seeks judgment against all defendants

19   jointly and severally, except as specifically indicated, for:

20   1.  Compensatory damages according to proof;

21   2.  Special damages, including but not limited to, attorneys'

22   fees and other legal costs, loss of income and employment benefits,

23   lost value of the ticket for the Raiders-Chargers game, and damages

24   to Plaintiff's personal and professional reputation, in an amount

25   to be determined at trial, according to proof;

26   3.  Punitive damages in the amount of $500,000. as Defendant

27   SDPD Officer Hill; in the amount of $100,000 as to each individual

28

1 | defendant; and in the amount of $1,000,000 as to each entity

2 | defendant except the City of San Diego;

3 |     4.   Reasonable attorneys' fees and costs of suit pursuant to

4 | 42 U.S.C. sec.1988 and California Civil Code sec.50 et seq.;

5 |     5.   For injunctive relief according to proof;

6 |     6.   For such further relief as the Court may deem necessary

7 | and proper.

8 | Dated: October 26, 2001

9

10

11 | Meir J. Westreich
Attorney for Plaintiff

12 | **DEMAND FOR JURY TRIAL**

13 | Plaintiff demands trial by jury.

14 | Dated: October 26, 2001

15

16

17 | Meir J. Westreich
Attorney for Plaintiff

18

19

20

21

22

23

24

25

26

27

28

```
 1  MEIR J. WESTREICH
    Attorney at Law
 2  221 East Walnut, Suite 200
    Pasadena, California 91101
 3  626-440-9906

 4

 5  Attorney for Plaintiff

 6

 7

 8                     UNITED STATES DISTRICT COURT

 9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  ELIZABETH M. ACOSTA,              ) Case No.
                                      )
12                     Plaintiff,     ) COMPLAINT FOR DAMAGES AND
                                      ) FOR INJUNCTIVE RELIEF
13                                    )
    vs.                               ) [42 U.S.C. sec.1983 &
14                                    )  Pendent State Claims]
    CITY OF SAN DIEGO, a municipal    )
15     corporation; GARY HILL, JOSEPH )
       KROUSS, ERIC STAFFORD, RAPHAEL )
16     CIMARRUSTI & DOES I-V, in their)
       official & individual capacities; ) JURY DEMANDED
17     QUALCOMM STADIUM, an independent  )
       municipal agency; VOLUME SERVICES )
18     OF AMERICA dba MURPHY'S CLUB;  )
       MURPHY'S CLUB; HENRY FONTENETTE, )
19     MICHAEL OLIVER & DOES VI-X, in )
       their representative & individual )
20     capacities; ELITE SHOW SERVICES, )
       Inc.; DONALD WILLIAMS, VLADIMIR )
21     ATABEKIAN & DOES XI-XV, in their )
       representative & individual     )
22     capacities; SAN DIEGO CHARGERS, )
       INC.; DOES XVI-XX,              )
23                                     )
                       Defendants.     )
24  _____)

25

26

27                       ATTACHMENT A

28
```

---

1

**COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF**

1  MEIR J. WESTREICH
   Attorney at Law
2  221 East Walnut, Suite 200
   Pasadena, California 91101
3  626-440-9906

4

5  Attorney for Plaintiff

6

7

8                    UNITED STATES DISTRICT COURT

9               SOUTHERN DISTRICT OF CALIFORNIA

10

11 ELIZABETH M. ACOSTA,              ) Case No.
                                     )
12                     Plaintiff,    ) COMPLAINT FOR DAMAGES AND
                                     ) FOR INJUNCTIVE RELIEF
13                                   )
   vs.                               ) [42 U.S.C. sec.1983 &
14                                   )  Pendent State Claims]
   CITY OF SAN DIEGO, a municipal    )
15    corporation; GARY HILL, JOSEPH )
      KROUSS, ERIC STAFFORD, RAPHAEL )
16    CIMARRUSTI & DOES I-V, in their)
      official & individual capacities; ) JURY DEMANDED
17    QUALCOMM STADIUM, an independent)
      municipal agency; VOLUME SERVICES )
18    OF AMERICA dba MURPHY'S CLUB;  )
      MURPHY'S CLUB; HENRY FONTENETTE,)
19    MICHAEL OLIVER & DOES VI-X, in )
      their representative & individual )
20    capacities; ELITE SHOW SERVICES,)
      Inc.; DONALD WILLIAMS, VLADIMIR)
21    ATABEKIAN & DOES XI-XV, in their)
      representative & individual     )
22    capacities; SAN DIEGO CHARGERS, )
      INC.; DOES XVI-XX,             )
23                                   )
                       Defendants.   )
24 _____ )

25

26

27                    ATTACHMENT A

28

                          1
   ─────────────────────────────────────────────
   COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF

**ORIGINAL**

FILED

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

OCT 29 2001

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: **DEPUTY**

I. (a) PLAINTIFFS

ELIZZABETH M. ACOSTA

DEFENDANTS

SEE ATTACHMENT "A"

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   SAN DIEGO
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

MEIR J. WESTREICH
221 E. WALNUT AVENUE, SUITE 200
PASADENA, CALIFORNIA 91101
(626)440-9906

ATTORNEYS (IF KNOWN)

UNKNOWN

**01 CV 1973 L (JAH)**

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

42 U.S.C. 1983 CLAIMS FOR FALSE ARREST, EXCESSIVE FORCE AND MALICIOUS PROSECUTION ARISING FROM ARREST AT QUALCOMM STADIUM DURING CHARGERS-RAIDERS GAME AND SUBSEQUENT CRIMINAL PROSECUTION.

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☒ 444 Welfare | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 555 Prison Conditions | | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23

DEMAND $ ACCORDING TO PROOF

Check YES only if demanded in complaint
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See Instructions):
JUDGE N/A   Docket Number

DATE   OCTOBER 25, 2001

SIGNATURE OF ATTORNEY OF RECORD

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)



CB #190 76278 10/29/01